United States District Court
Southern District of Texas
**ENTERED**
October 11, 2024
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| Holloway Lodging (222 Benmar) LLC, et al., *Plaintiffs,* | § § § § | |
| v. | § § | Civil Action 4:22-CV-1745 |
| Cushman Wakefield U.S. Inc., *Defendant/Third-Party Plaintiff,* | § § § § § | |
| v. | § § | |
| ACE American Insurance Company, *Third-Party Defendant,* | § § § | |
| | | |
| Holloway Lodging (222 Benmar) LLC, et al., *Plaintiffs,* | § § § § | |
| v. | § § | Civil Action 4:22-CV-1982 |
| ACE American Insurance Company, *Defendant,* | § § § § | |

## MEMORANDUM AND RECOMMENDATION

These cases have been referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). Pending before the court is Defendant and Third-Party Plaintiff Cushman & Wakefield U.S. Incorporated's Motion for Partial Summary

Judgment, No. 1745, ECF No. 52,[1] and Plaintiffs Holloway Lodging (222 Benmar) LLC and Holloway Lodging (16666 Northchase) LLC's Motion for Partial Summary Judgment, No. 1982, ECF No. 34. The court recommends that the motions for partial summary judgment be **DENIED**.

## *1. Facts and Procedural History*

In 2019, Holloway Lodging (222 Benmar) LLC and Holloway Lodging (16666 Northchase) LLC (Plaintiffs), subsidiaries of the commercial real estate company Holloway Lodging, each purchased a professional office building located in Houston, Texas. No. 1745, ECF No. 15 at 3-5. Holloway Lodging (222 Benmar) LLC purchased an eight-story professional office building located at 222 Benmar Drive while Holloway Lodging (16666 Northchase) LLC purchased a six-story professional office building located at 16666 Northchase Drive. *Id.*

Following these purchases, each Plaintiff signed a Property Management Agreement (PMA) with Cushman & Wakefield, U.S. Incorporated (CWUS), a corporation specializing in the management of commercial real estate. No. 1745, ECF No. 17-1. Pursuant to the PMAs, CWUS became their agent in connection with the provision of property management services for the Buildings. *Id.*

The Plaintiffs again turned to CWUS when searching for property insurance for the Buildings. CWUS offered to add the Buildings to a "master insurance program" called "PAX" that

---

[1] This Memorandum and Recommendation disposes of motions for partial summary judgment in two separate cases: *Holloway Lodging (222 Benmar) LLC and Holloway Lodging (16666 Northchase) LLC v. ACE American Insurance Company*, 4:22-CV-1982, and *Holloway Lodging (222 Benmar) LLC and Holloway Lodging (16666 Northchase) LLC v. Cushman and Wakefield, U.S. Inc.*, 4:22-CV-1745. When referring to docket entries in either case, the court will precede the docket number with an abbreviated case number as in the following example: No. 1745, ECF No. 1 at 5.

would provide coverage for physical loss and damage to the Buildings. No. 1745, ECF No. 15 at 5; No. 1982, ECF No. 34 at 5. Based on CWUS's representations, Plaintiffs enrolled the Buildings into the master insurance program and became insureds on the property policy issued by ACE American Insurance Company (ACE). No. 1982, ECF No. 34 at 5; No. 1745, ECF No. 52-1 at 3, 5.

The policy period ran from May 1, 2020 to May 1, 2021. No. 1745, ECF No. 52-1 at 16. The insurance policy covered "direct physical loss or damage occurring" during the policy period. *Id*. The policy included an endorsement, titled "Scheduled Vacant Locations – Requirements and Exclusions" (Vacancy Endorsement) which excluded from coverage an insured's vacant property in the event the insured failed to adhere to six requirements, one of which is relevant here: "conduct monthly inspections of the Vacant location and maintain written reports of each such inspection, with such reports to include the following information: the location of the building or structure; *the ambient inside temperature(s) of the building or structure*; descriptions of any damage or vandalism noted; and the status of all protective systems." No. 1745, ECF No. 52-2 at 2 (emphasis added). The Buildings were vacant during the policy period and thus subject to the Vacancy Endorsement.

In February 2021, as warnings for Winter Storm Uri were issued, Plaintiffs set about to prevent or minimize potential damages to the Buildings. The asset manager for Holloway Lodging inspected the Buildings in the immediate days before the storm. No. 1745, ECF No. 52-8 at 3, 8. She received reports from the main engineer for the Buildings that the Buildings were in good condition, that the sprinkler and fire suppression systems were installed and working, and that the ambient inside temperature of the Buildings was sufficient to prevent them from

3

sustaining damages from the expected freezing temperatures. *Id.* at 29. The temperature of the Buildings was adjusted by an automatic heating system that set the temperature to 70 degrees Fahrenheit once the outside temperature fell below 55 degrees Fahrenheit. No. 1982, ECF No. 36-1 at 2-3.

Winter Storm Uri blanketed Houston in freezing temperatures. No. 1745, ECF No. 52-4 at 6. On February 17, 2021, the automatic heating system did not trigger because ERCOT shut the power to the Buildings off. No. 1745, ECF No. 52-4 at 6; No. 1745, ECF No. 52-7 at 5. Freezing temperatures caused ice to form inside the Buildings' pipes which caused them to crack. No. 1745, ECF No. 52-7 at 5; No. 1745, ECF No. 52-8 at 13. Once ERCOT reactivated the power grid, the temperature inside the Buildings rose, the pipes burst, and the Buildings flooded which caused extensive damages. No. 1745, ECF No. 52-7 at 5

On February 18, 2021, CWUS, as agent for Plaintiffs, submitted a claim to ACE for the damage to Plaintiffs' Buildings. Ace hired a claims adjustor from Crawford and Company (Crawford) to investigate the claims. No. 1745, ECF No. 52-6, at 4. After inspecting the Buildings, the investigator submitted his report to ACE wherein he concluded that the freezing temperatures caused the loss. *Id.* at 6. After receipt of this report, Matthew Schlett, the ACE employee assigned to Plaintiffs' claim, concluded in a Reservation of Rights (ROR) letter that the primary cause for the damage was the loss of electricity and change in temperature. No. 1745, ECF No. 52-5 at 4. The ROR did not list any other cause for the damages, nor did Mr. Schlett claim that CWUS or Plaintiffs acted in a manner which injured or damaged ACE. No. 1745, ECF No. 52-6 at 40-41.

Yet ACE refused to provide coverage for the Buildings. The reason? The Plaintiffs had failed to complete a requirement listed in the insurance policy's Vacancy Endorsement: to record the

ambient temperature of the Buildings in monthly reports. No. 1745, ECF No. 52-6 at 23-4. Mr. Schlett stated that the Plaintiffs had not recorded the ambient temperature of the Buildings in any of the monthly reports submitted to ACE during the policy period. *Id.* at 24.

The Plaintiffs brought two separate lawsuits in Harris County state court: the first against CWUS on May 5, 2022; the second against ACE on May 10, 2022. No. 1745, ECF No. 1 at 1. No. 1982, ECF No. 1-4. Both suits were removed to this court. No. 1745, ECF No. 1. No. 1982, ECF No. 1. Plaintiffs and CWUS (together, Movants) have moved for partial summary judgment against ACE. No. 1745, ECF No. 52; No. 1982, ECF No. 34. CWUS urges this court to declare that the property insurance policy provides coverage for the damages to Plaintiffs' Buildings. No. 1745, ECF No. 52. Plaintiffs argue that ACE has breached the insurance policy by refusing to provide coverage for the Buildings. No. 1982, ECF No. 34. Movants argue that the failure to record the ambient temperatures did not prejudice ACE and was therefore not a material breach of the insurance policy. No. 1745, ECF No. 52; No. 1982, ECF No. 34. Accordingly, Movants argue that ACE was not excused from providing coverage for the loss. *Id.* ACE has responded to both motions, arguing that Plaintiffs' failure to record the ambient temperature excluded the Buildings from coverage. No. 1745, ECF No. 53; No. 1982, ECF No. 35. Movants have replied. No. 1745, ECF No. 54; No. 1982, ECF No. 36. The issue is now ripe for resolution.

### 2. *Summary Judgment Legal Standard*

A court should grant summary judgment when, viewing the evidence in the light most favorable to the non-movant, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Davenport v. Edward D. Jones & Co.*, 891 F.3d 162, 167 (5th

Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). A genuine issue of material fact exists only if a rational jury, reviewing the complete record, could return a verdict for the non-movant. *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Initially, "[t]he movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–25 (1986)). If the movant carries this burden, then the burden shifts to the non-movant to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The non-movant must "go beyond the pleadings," using competent summary judgment evidence to cite "specific facts" showing a genuine issue for trial. *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357 (5th Cir. 2017) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).

The court must review all evidence in the light most favorable to the non-movant and must draw all reasonable inferences in favor of the non-movant. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

### 3. *Summary Judgment Analysis*

Movants argue that summary judgment should be granted because the evidence shows that Plaintiffs' breach of the recording requirement was immaterial. No. 1745, ECF No. 52; No. 1982, ECF No. 34. That is, Movants argue that Plaintiffs' failure to record the temperatures in monthly reports did not cause or contribute to the damages to the Buildings and thus did not prejudice ACE. *Id.* ACE responds that summary judgment should be denied because the evidence shows that the Buildings were

excluded from coverage because Plaintiffs' failed to comply with the recording requirement. No. 1745, ECF No. 53; No. 1982, ECF No. 35.

### A. Choice of Law

Bearing on this dispute is whether Texas or Pennsylvania law controls.[2] All parties agree, however, that a choice of law analysis is unnecessary because the states are in accord on the matter. No. 1745, ECF No. 52 at 15; No. 1982, ECF No. 34 at 11-12; No. 1982, ECF No. 35 at 5. The court agrees with the parties that there is no conflict of law between Texas and Pennsylvania. Under the law of each state, the plain language of the Vacancy Endorsement dictates the outcome of this case.

### B. The Plain Language of the Vacancy Endorsement

Under Texas law, insurance policies are interpreted under the same rules governing the interpretation of contracts. *See AmGuard Ins. Co. v. Lone Star Legal Aid*, No. CV H-18-2139, 2020 WL 60247 (S.D. Tex. Jan 6, 2020) (citing *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 892 (Tex. 2017). The same is true under Pennsylvania law. *Am. and Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 606 Pa. 584, 609, 2 A.3d 526, 541 (2010) (stating that insurance policies are contracts and that rules of contract interpretation require the parties' mutual intent to govern the interpretation). Under Texas and Pennsylvania law, a court is bound by the clear and unambiguous meaning of an insurance policy. *Id*; *Laguna Enterprises, LLC v. Westchester Surplus Lines Ins. Co.*, No. 2:21-CV-00277, 2023 WL 1774990, at *3 (S.D. Tex. January 31, 2023) (finding that the language of a protective safeguard endorsement (PSE) was unambiguous and therefore had

---

[2] The policy includes a choice of law provision that the interpretation and application of it will be governed by the substantive laws of Pennsylvania without reference to that state's choice of law principles. No. 1745, ECF No. 52-1 at 57.

to be enforced). Moreover, the parties' mere dispute about the meaning of an insurance policy does not create an ambiguity. *Delaware Valley Management, LLC v. Continental Casualty Co.*, 572 F. Supp.3d 119, 127 (E.D. Pa 2021); *see also AmGuard Ins. Co.*, 2020 WL 60247, at *2.

Under the terms of the insurance policy, ACE was obliged to pay for "direct physical loss or damage [to the Buildings] occurring during the Policy Period." No. 1745, ECF No. 52-1 at 16. However, the insurance policy included a Vacancy Endorsement which "changes the policy." No. 1745, ECF No. 52-2 at 2. The Vacancy Endorsement provides that "If the Insured fails to simultaneously comply with all of the conditions described in A.1. through A.6., above, for any Vacant location, such Vacant location is excluded from coverage under this Policy." No. 1745, ECF No. 52-2 at 2. Condition A.6 includes a requirement that the insured "Conduct monthly inspections of the Vacant location and maintain written reports of each such inspection," and that the insured include in these monthly reports "the ambient inside temperature(s) of the building or structure[.]" *Id.*

No party argues that the terms of the monthly report requirement are ambiguous, and for good reason—they are clear. Plaintiffs were required to include within each monthly report the ambient temperature of each Building. It is undisputed that neither CWUS nor Plaintiffs complied with this requirement. As such, according to the unambiguous terms of the Vacancy Endorsement, the Buildings were excluded from coverage.[3]

---

[3] Texas and Pennsylvania courts that have addressed this issue have also held that the plain language of a PSE controls. *See AmGuard Ins. Co.*, 2020 WL 60247, *4 (holding that because the endorsement unambiguously required insured to have an automatic fire sprinkler, and the insured did not have one, the insured's property was excluded from coverage); *Laguna Enterprises*, 23 WL 1774990, at *3 (holding that because the endorsement required the insured to have a smoke detector, and the insured did not have one, the insured's property was excluded); *Yera, Inc., v. Travelers Casualty Ins. Co. of America*, No. 1398 EDA 2013, 2014

## C. The Materiality of the Breach

The matter does not end there. Movants argue that, under both Texas and Pennsylvania law, an insurer must demonstrate that it was prejudiced by an insured's failure to comply with a policy requirement before refusing to provide coverage. No. 1745, ECF No. 52; No. 1982, ECF No. 34. Movants argue that ACE was not prejudiced because Plaintiffs' failure to record the internal ambient temperature of each Building did not cause damages to the Buildings or injure ACE.

Plaintiffs' main case is *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691 (Tex 1994). In *Hernandez*, the Texas Supreme Court considered whether an insurer was entitled to deny an insured's claim based on the insured's violation of a settlement-without-consent provision without first showing that it was prejudiced by the insured's violation. *Id.* at 692. The court started with a "fundamental principle of contract law" that a material breach of a contract excuses the non-breaching party's non-performance. *Id.* In determining materiality, the court drew from the Restatement (Second) of Contracts §241(a) and considered the extent to which the insurer was denied the anticipated benefit of the bargain when the insured failed to provide full performance, i.e., when the insured failed to obtain consent before settling the claim. *Id.* at 693. The Court recognized that an insured's settlement without consent could prevent the insurer from obtaining the anticipated benefit of the insurance contract by, for example, extinguishing a valuable subrogation right. *Id.* But the court also recognized that when the lost subrogation right "has no value," the insurer was not prejudiced and thereby the insured's breach was not material. *Id.*

WL 10936714, at *3 (holding that insured's failure to have an automatic sprinkler system, which was unambiguously required by policy endorsement, excluded insured's building from coverage); *Berenato v. Seneca Speciality Ins. Co.*, 240 F.Supp.3d 351, 357 (E.D. Pa. 2017) (same).

In *Hernandez*, the insurer stipulated that it suffered no financial losses due to the insured's failure to obtain its consent, nor had they ever refused their consent to settle a claim in similar circumstances. *Id.* Because the insurer remained "in the same position it would have occupied had the [insured] complied with the settlement-without-consent provision," there was no prejudice and therefore no material breach. *Id.* at 694.[4]

The Texas Supreme Court later reaffirmed the principle that assessing materiality requires focusing on the bargained-for exchange and the expected benefit of the bargain. In *PAJ, Inc., v. Hanover Ins. Co.*, 243 S.W.3d 630 (Tex 2008), the Court applied the prejudice requirement when an insured failed to adhere to a timely notice of suit provision in an insurance contract. *Id.* at 631-2. The court recognized the notice provision of the insurance contract was not an "essential" part of the bargained-for exchange and the insured's violation of it did not prejudice the insurer. *Id.* at 636. As such, the insured's breach was immaterial. *Id.* Pennsylvania law is the same. In *Brakeman v. Potomac*, 472 Pa. 66, 75, 371 A.2d 193, 197 (Pa. 1977), the Pennsylvania Supreme Court adopted a prejudice requirement in the context of untimely notice of suit. The court recognized that the violation of a notice requirement may not have harmed the insurer's interests. *Id.* In these cases, the evidence established that the insurer was not deprived of an expected benefit of the bargain. That is, the insured was not prejudiced.

Movants have not presented undisputed evidence that the same is true here. The question concerns whether the insurer was

---

[4] The court reads *Hernandez* to say that the insured's non-consensual settlement did not deprive the insurer of any subrogation right because, under the facts of the case, that right had no value at all. Thus, the insurer was not deprived of the benefit of its bargain. That is, the insurer was not prejudiced.

deprived of the anticipated benefit of the bargain. As *Hernandez*, *PAJ*, and *Brakeman* show, answering that question turns on defining the bargain. Here, ACE expected to receive monthly recordings of the ambient internal temperature of each Building and, in exchange, agreed to provide insurance coverage for a vacant building. There is a difference between *Hernandez* and *PAJ*, for example, where the evidence revealed that the insured's post-loss conduct did not deprive the insurer of anything of value, and this case, wherein the Plaintiffs have not shown that the ambient temperature requirement was not an anticipated and valuable benefit that ACE expected in exchange for insuring the buildings. The issue is not whether failure to comply with the PSE caused damage to the property. The issue is whether, in exchange for insuring a vacant property, ACE received what it bargained for—monthly reports which included the ambient internal temperatures of the Buildings. It did not.

Movants have provided no evidence as to whether ACE would have entered the contract without the requirement that Plaintiffs record the ambient temperature of each Building. They have provided no evidence that ACE has ever, or would ever, insure vacant properties absent the Vacancy Endorsement's ambient temperature requirement. Nor have Movants provided any evidence concerning whether the ambient temperature provision was valuable. In short, the Movants have not provided evidence that ACE was not denied an anticipated benefit of the insurance policy. Movants, therefore, have failed to show that their breach was immaterial.[5]

---

[5] Movants' rely heavily on Matthew Schlett's deposition testimony for the proposition that Plaintiffs' failure to record temperatures did not cause or aggravate any damage to the building or otherwise damage or prejudice ACE. No. 1745, ECF No. 52 at 10-11; No. 1982, ECF No. 34 at 18–21. Mr. Schlett did so testify, but not as a corporate representative. ECF No. 52-6 at 19. Schlett's testimony thus does not rise to the level of a stipulation or admission by ACE that the requirements in the PSE were without any value which is what the court

Nor does *Custom Container, LLC v. Century*, 606 F.Supp. 3d 113 (M.D. Pa 2022), change the result here. In that case, the insured sued the insurer for refusing to provide coverage for the insured's building after it was damaged in a fire. The insurer's investigator found that the cause of the fire was cotton rags left near a spray paint booth. *Id.* at 116. The insurance policy included a PSE which required the insured to store and remove used or soiled rags daily and maintain a fire suppression system in complete working order. *Id.* at 116, 122. The court, relying on Pennsylvania law, held that the PSE created conditions subsequent with which only substantial compliance was required to hold the insurer to its obligation. *Id.* at 121. There was no dispute that the insureds initially installed a functioning fire system but that, on the day of the fire, it was not fully operational. *Id.* at 122. Moreover, no evidence was presented that the cotton rags left near the booth were "used or soiled." *Id.* at 123. As such, the evidence did not reveal that the insured failed entirely to comply with the PSE's requirements.

Here, however, there is no dispute that the Plaintiffs failed entirely to satisfy the requirement that they record the ambient temperature of the Buildings. As Mr. Schlett reported, the Plaintiffs never recorded the temperature of the Buildings in any of the monthly reports. No. 1745, ECF No. 52-6 at 23-4. This failure to comply with the requirement *at all* precludes the Movants' argument that Plaintiffs have substantially complied with the PSE.[6]

---

believes is required by *Hernandez*. 875 S.W.2d at 693 (discussing that the insurance company stipulated that it suffered no prejudice and that the anticipated benefit was without value). The court cannot say based on Schlett's testimony that Movants' failure to comply with the Vacancy Endorsement did not prejudice ACE.

[6] The court finds support for this position in *Custom Container Solutions, LLC v. Century*, No. 4:20-CV-01793, 2022 WL 4389698 (M.D. Pa. Sep. 22, 2022), in which the *Century* court returned to the facts of its earlier order on a motion for reconsideration. It contrasted the

### 4. *Conclusion*

The court recommends that CWUS's Motion for Partial Summary Judgment, No. 1745, ECF No. 52, be **DENIED**. The court recommends that the Holloway Plaintiffs' Motion for Partial Summary Judgment, No. 1982, ECF No. 34, be **DENIED**.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on October 10, 2024.

Peter Bray
United States Magistrate Judge

---

facts in *Century* with those of earlier Pennsylvania cases—*Yera*, 2014 WL 10936714 and *Berenato*, 240 F. Supp. 3d 351 (E.D. Pa. 2017). Analyzing the facts of *Berenato*, the court stated that turning off the sprinkler system necessarily resulted in a failure to substantially comply with the PSE's requirement that the insured maintain the sprinkler in complete working order. *Century*, 2022 WL 4389698, at *4. Analyzing *Yera*, the court stated that there was no need for the *Yera* court to have analyzed whether the requirement at issue was a condition subsequent or precedent because it was undisputed that the insured's failure to have a sprinkler was a clear violation of the terms of the PSE. *Id.* As such, the *Century* court understood that a complete failure to adhere to an insurance policy's PSE requirements was necessarily a failure to substantially perform. *Id.*